Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Welch and Justice Vaughn. The first case this morning is number 520169, People v. Privatt. Arguing for the appellant, Carl Privatt, is Christina O'Connor. Arguing for the appellate, People of the State of Illinois, is Trent Marshall. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. We appreciate your patience. We were having some audio issues with the Zoom, but we got those taken care of. Ms. O'Connor, are you ready to proceed? Yes, your honor. Thank you. Go right ahead. Thank you. May it please the court, counsel. My name is Christina O'Connor. I'm an assistant appellate defender at the Office of the State Appellate Defender, and I represent Mr. Carl Privatt in this matter. This case involves several issues, including reasonable doubt, as well as errors throughout the proceedings. For the reasons argued today and in the briefs, this court should reverse Mr. Privatt's conviction. Alternatively, this court should reverse and remand for a new trial, post-trial proceedings, and or a new sentencing hearing. In this case, the state charged Mr. Privatt with one count of predatory criminal sexual assault of a child based on an act of sexual penetration, where he allegedly touched A.M.'s vagina with his hand. At trial, A.M. testified that Mr. Privatt had touched her private, and when asked if he had done anything with his hands, A.M. stated that he moved it. In the CAC interview, when A.M. was asked exactly what Mr. Privatt did with his fingers, A.M. responded that he just rubbed it. The offense of predatory criminal sexual assault can be committed one of two ways, either through sexual penetration or through any contact, however slight, for the purposes of sexual gratification. In this case, the state chose to charge Mr. Privatt under the theory that he committed this offense through an act of sexual penetration, which means that the state was required to prove beyond a reasonable doubt that Mr. Privatt's finger intruded into A.M.'s sex organ. Additionally, if sexual penetration is alleged, the state does not need to prove the element of sexual gratification. In People v. Majette, our Supreme Court made it clear that mere touching or rubbing of the sex organ with a hand or finger does not prove sexual penetration, and again here, A.M. stated that Mr. Privatt just rubbed it, and this is actually what the state reiterated during closing arguments, while it gave the trial court the wrong standard for what it had to prove. The state erroneously believed that the fingers were considered an object, and if that were true, that would mean that the burden of proof would be any contact, however slight, for sexual penetration. However, well before this trial took place, our Supreme Court in Majette made it clear that fingers are not objects, and again, the evidence in this case does not support that an intrusion occurred. Unlike what the state now suggests on appeal, the language of how this offense was charged was not simply mere surplusage. There are different elements required to be proven depending on the theory, and this is evidenced by the applicable jury instructions for this offense, which are 11.104. There was no mention of sexual gratification at any point during the trial, nor did the state ask the trial court, who was the finder of fact here since this was a bench trial, to make such a of sexual penetration. Thus, the state failed to prove the element of sexual penetration, and Mr. Prevot's conviction should be overturned. Alternatively, this court can exercise its power under Rule 615b3 to reduce Mr. Prevot's conviction to aggravated criminal sexual abuse, as the appellate court did in a similar case of People v. Guerrero. Moving on to the next issue in this case, during trial, AM was permitted to- Before you move on to the next issue, wasn't Majette different in the fact that in Majette, the touching was over underwear, outside the clothing, and in the incident case, it was under the underwear, directly on the sex organ? Your Honor, on page, I believe it is 349 in People v. Majette in the Supreme Court decision, there was testimony that there was touching also underneath her panties. So there was touching underneath the panties as well as over the underwear as well, and the Supreme Court still stated that was not enough to support the conviction. Does that answer your question? Yes, thank you. Okay. Moving on to the next issue, during trial, AM was permitted to testify via closed circuit television after the trial court found that AM would suffer severe emotional distress, and that distress would cause her unable to reasonably communicate or suffer severe adverse effects. The trial court based this finding on how AM's therapist, Schaefer, stated that she believed AM would suffer severe emotional distress and shut down just like she did in their session. However, the evidence at the hearing on the state's motion did not suggest that AM would have been unable to reasonably communicate if she was required to testify in front of Mr. Pravat. Schaefer specifically stated that AM became uncomfortable the one time they talked about Mr. Pravat, but Schaefer did not push AM on the subject, and she never completely shut down. AM simply slumped in her chair, got a little quieter, and stated she was uncomfortable and that she wanted to change topics. Furthermore, Schaefer testified that there was nothing atypical about the trauma that AM exhibited. So under the statute, in order to pass constitutional muster, the state has a hefty burden of proof to show that AM would suffer severe emotional distress and that that distress would cause her to be unable to reasonably communicate or suffer severe adverse effects. This statute that allows for the closed circuit testimony, as an exception, comes from the Supreme Court of the United States case Maryland v. Craig, where the court explained that the state has an interest in preventing further harm to children, but defendants also have the right to confront witnesses against them. Thus, the Supreme Court created an interest-balancing approach and held that the child must exhibit more than mere nervousness or some reluctance to testify in order to overcome the defendant's constitutional rights, which do reflect a preference for face-to-face confrontation. Thus, this is not an exception for every case. It is only designed for specific cases in which the state can meet that hefty burden, typically because there are many benefits to having your accuser face you in open court, and that is what the Constitution prefers. Notwithstanding the issue of whether or not this exception still passes constitutional muster in light of Crawford, this is an exception that should be limited to the most severe cases. No one is arguing that AM was not affected by Mr. Pravatt's actions, nor that she may have been uncomfortable if required to but the hefty statutory burden must be met here and Mr. Pravatt's constitutional rights cannot simply be hand-waved away because they are deemed to be inconvenient. The state does have a legitimate interest in protecting children in these types of cases, but Mr. Pravatt's constitutional rights are equally as important, especially considering he was presumed innocent throughout the trial proceedings. Furthermore, this cannot be considered harmless error as AM's testimony is what the trial court relied on, and it was the most direct evidence supporting the trial court's guilty verdict. Furthermore, all of the additional testimony that came in was outcry statements that were allowed under section 115.10, so without AM's testimony that evidence would not come in as well, so all of the evidence relies on AM's testimony and statements in this case. Does the court have any questions on that issue? No, just to be clear, the standards of abusive discretion, correct? So we argue that because we're raising a confrontation clause issue that is de novo, but other courts have deemed it to be an abusive discretion standard, so we still prefer this court to review it under de novo for the issue of statutory interpretation and confrontation clause, but we do recognize that it is also being considered an abusive discretion standard, so we'll leave it up to this court to decide what the proper standard review is. Thank you. You're welcome. Briefly, I would like to discuss the issue of the trial court failing to recall the evidence for the motion for a new trial. In this case, Mr. Pravat filed a motion for a new trial on the basis that his seizure disorder would cast reasonable doubt on his conviction. The seizure disorder was only discovered after the trial. Mr. Pravat experienced multiple seizures, and I believe this was before sentencing, so he went to the hospital and was diagnosed with a recurrent seizure disorder. There was no mention of a seizure disorder at any point before or during trial. When Mr. Pravat was questioned before he was charged, he talked about having strokes, but there was no mention of a seizure at that point. So when the trial court considered the motion for a new trial, the court found that Mr. Pravat had already presented evidence of his was immaterial because of the defense that Mr. Pravat apparently testified about, which in this case, Mr. Pravat did not testify. So the court denied this claim. The trial court failed to recall the crux of what Mr. Pravat was arguing, which denied him due process in having a trial court actually consider the proper evidence in this case. So Mr. Pravat was denied a fair hearing on this motion for a new trial. So for the reasons argued today and in the briefs, this court should reverse Mr. Pravat's conviction. Alternatively, this court should reverse and remand for a new trial, post-trial proceedings, and or a new sentencing hearing. I will address the sentencing issue if I have time on rebuttal, unless this court has any questions, but I see I'm almost out of time. Well, thank you, counsel. Justice Vaughn or Justice Welch, do you have any questions at this point? No. So, Connor, can you tell me again the site on the jet where you said there was evidence, the touches directly on the vagina, what page was that? Yes, your honor, page 349. I know, I believe that's what it is. It is cited in the opening brief and in the reply brief, but I believe it is 349. And just to be sure, page 349 was in the appellate decision, correct? The Supreme Court decision. Okay. They listed out some of the testimony at trial of what went on between the questioning, and there was testimony that said that it was also underneath the underwear. I just want to make sure I've got the right court. Okay, yeah. So my jet was a Supreme Court case? Yes, it was appellate court, and then it was affirmed at the Supreme Court. Okay, thank you. Thank you. Okay. Thank you, counsel. Anything else, Justice Vaughn? No, thank you. All right, Mr. Marshall, go right ahead. Thank you, your honor. I'll try to address these in reverse order. The trial court did correctly recall the crux of the defense, which was that a medical condition caused him to lose his balance and cause the contact with his step-granddaughter. He claimed various medical conditions, especially during his interview with the police. They changed over time. The fact that the trial court thought it was seizures here or strokes there. The court later said that the alleged seizure disorder was immaterial because he rejected the medical defense altogether. So I don't really think that had any bearing on his decision. The circuit court TV, closed-circuit TV finding. State's position, it didn't abuse its discretion because it had individualized opinion from the counselor, Alexis Church, who had seen the victim numerous times and indicated that she would, the victim would shut down if she was pushed. So it didn't. The majette discussion regarding touching under the clothes that was insufficient, if I recall correctly, that was touching in the nondescript vaginal area. So it wasn't as specific. But I know there are cases out there, including one from this court, can't remember the name of it, that rubbing underneath the underwear does allow for the inference. And although the victim testified that it was touching and then he moved his hand, she was more specific when she spoke to her mom and Alexis Church, when she described the rubbing. And in fact, she told Alexis Church that the manner in which he rubbed it made her feel very, very uncomfortable. So I think the trial court could have, if it was required to find penetration occurred, it could have inferred that there was an actual intrusion instead of just a glancing contact. Mr. Marshall, the case is the case. You can't remember. Is that the one you cited in your brief, people versus branch? 217-130-220. That brings the bell. Okay. I just want to make sure my notes are correct. Okay. Thank you. As for the reasonable doubt argument, I feel it's kind of a variance argument wrapped in reasonable doubt sheep's clothing, if that makes any sense. The state didn't change its theory. It did allege penetration in the charging instrument, and it did argue at trial penetration occurred. But in context, it seemingly conflated the concepts. And if you'll permit me to look at this screen for a second, at the beginning of the state's closing argument at the bench trial, it said, the defendant has been charged with the offense of predatory criminal sexual assault of a child. Specifically has been charged that on by making contact, however slight, between the victim's vagina and his hand. Now, trial court, and she's right, that's technically not a act of sexual penetration. Slight contact between hand and vagina. No, it has to be intrusion. However, slight contact between hand and vagina is an offensive, or is the commission of predatory criminal sexual assault. So I think that was where the confusion was. I don't think the trial court is confined by state's recitation of what the law might be when it's concerning whether the state sufficiently proved the charge. And even if it was constrained, the state, again, believes that an act of penetration was proven. Just didn't have to be. I really don't have anything else to add to what's in the state's brief. And if there aren't any questions, I would just ask that the defense convictions and sentence be affirmed. I know Ms. O'Connor is probably going to hit that fourth issue regarding Dr. Quaino's report. Yes, sir. Do you want to touch on that or stand on your brief? Either way. Well, I'll touch on that. I would say this. It's interesting because it's not like he raised this before trial and had to give notice and then had a fitness report. It was raised post-trial. And I would say it was raised September 19th or December 2019, when the first scheduled sentencing hearing was set to kick off. That's when he reported hospitalization procedures and memory losses. And they had a fitness report. They said he was feigning his memory losses. Now, the state showed up at the sentencing hearing and the motion hearing, motion for a new trial hearing, readily prepared to prove that his memory loss was feigned. They did that through letters, his testimony. And then they did ask, please take judicial notice of Quaino's report. And he said he did. I'm not sure how far he considered it because he said something later about whether his memory loss is real or feigned. He's in denial. But the state's position that he put his mental state at an issue there. And it would be, it seems untenuous to, maybe the trial court had a duty at that point. As soon as he got up there and started, I don't remember my trial. I don't remember this. I don't remember that. I think it was reasonable for him to consider Quaino's report at that point, at the very least. But again, I don't think he considered it all that much. And it certainly wasn't prejudicial like the cases she cited where the fitness report would go into stuff like this guy's a future serial killer or something. There was nothing like that in there. It was just, he's feigning his memory loss. And that's the only thing it was directed towards. But it's interesting because the statutes, they're directed at trial, putting your mental state at issue at trial, not necessarily a sentencing hearing. But I don't think the trial court abused its discretion, its rulings, or if it did consider it, it was harmless. I guess that's what I'd say on issue four. Okay. Well, thank you, Justice Welch or Justice Maher. Do you have any questions? No questions. No questions. Well, thank you, Mr. Marshall. Thank you for your time, Your Honors. Ms. O'Connor, any rebuttal? Yes, Your Honor. Thank you. So briefly, Mr. Pravat does have a lot of different medical conditions, but a seizure disorder is different because that could also affect the intent. It's uncontrollable movements, uncontrollable jerking. It could be symptoms of seizure. So at trial, the defense really was that Mr. Pravat had almost no contact. There was mention about medical issues, but the main theory of the case from defense counsel was that there was no contact like what was alleged. So this could impact. And again, the cases that deal with this issue talk about whether or not the trial court remembered it correctly. And if the trial court would have believed it, would it have made a difference? So the trial court clearly remembered incorrectly, and that denied Mr. Pravat the due process of having a fair hearing on this motion. Furthermore, and talking about feeling uncomfortable with just rubbing, that still doesn't support an intrusion. And while this court did hold in that previous case that the state take precedence over this issue and the reference of merely just rubbing is not enough to prove intrusion. So we would maintain that there was no evidence to support an intrusion in this case. Furthermore, the state did maintain this was sexual penetration and just got the issue wrong. The state stated that it was believed an object where, again, the fingers are not objects. So when the state gave its definition of what it needed to prove in closing arguments, it stated that it was an object and it only had to prove any contact. There was no mention at any point of sexual gratification. Now, sexual gratification can be inferred. But again, the fact finder has to make a finding here. And when nobody made that finding or talked about it, and while the trial court is presumed to know the law, that was not on anybody's radar. It appears that everybody operated under the wrong assumption here. Furthermore, Dr. Cuneo's report for sentencing, the law is very clear. It can only be considered if there's an affirmative defense used at trial. And as the state mentioned, this is a little bit of an interesting situation because this occurred after trial, but there was no affirmative defense used. So this was improper. The state asked the court to take judicial notice of Dr. Cuneo's report, quite frankly, very early on in the sentencing hearing. So this isn't allowed under Illinois law. And in terms of whether or not being harmless, Mr. Pravat lacks any criminal history. This has been alleged as a one-time occurrence. And there was a deal for if Mr. Pravat had a bench trial, the maximum sentence he could receive would be 30 years. Mr. Pravat received 20 years, which is a lot closer to the maximum of what the agreement allowed. So it cannot be considered as harmless because the trial court not only listened to the state's arguments, specifically over objection of counsel stated it would take judicial notice of the report and stated it would consider the report when fashioning its sentence. So this cannot be deemed simply harmless because we don't really know what the court put the weight on it, and it could have made a difference. Does the court have any other questions? I do not. Justice Vaughn? Okay. Well, thank you, counsel. Obviously, we will take the matter under advisement, and we will issue an order in due course. You all have a great day.